IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

_____ )
UNITED STATES OF AMERICA,           )
                                    )
                                    )   DOCKET NO. 3:12-CR-239
            vs.                     )
                                    )
FRANK DeSIMONE,                     )
                                    )
                Defendant.          )
_____ )


TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE GRAHAM C. MULLEN
UNITED STATES SENIOR DISTRICT COURT JUDGE
WEDNESDAY, FEBRUARY 18, 2015 AT 10:37 A.M.


APPEARANCES:

On Behalf of the Government:

        MARIA KATHLEEN VENTO, ASSISTANT U.S. ATTORNEY
        U.S. Attorney's Office
        227 W. Trade Street, Suite 1650
        Charlotte, North Carolina  28202


On Behalf of the Defendant:

        R. BRENT WALKER, ESQ.
        212 S. Tryon Street, Suite 1360
        Charlotte, North Carolina  28281




        JILLIAN M. TURNER, RMR, CRR, CLR
              Official Court Reporter
           United States District Court
              Charlotte, North Carolina

2

```
 1  (Wednesday, February 18, 2015 at 10:37 a.m.)
 2                P R O C E E D I N G S
 3  (Counsel and defendant present.)
 4          THE COURT:  Good morning.  This is the matter of
 5  the United States v. Frank DeSimone.
 6          Mr. DeSimone signed a plea agreement November 2013.
 7  Mr. DeSimone, would you please stand.  You signed a plea
 8  agreement and appeared before a magistrate judge and entered
 9  a plea of guilty.
10          Were your answers true and correct when you
11  answered the magistrate judge's questions?
12          THE DEFENDANT:  Yes, sir.
13          THE COURT:  Please speak up so everyone can hear
14  you.
15          THE DEFENDANT:  Yes, sir.
16          THE COURT:  All right.  Mr. Walker.
17          MR. WALKER:  Good morning, Your Honor.
18          THE COURT:  Good morning.  Do you believe your
19  client fully understood the questions that the magistrate
20  asked him?
21          MR. WALKER:  Yes, I do, Your Honor.
22          THE COURT:  Mr. DeSimone, did you answer those
23  questions the way you did, and are you going forward with the
24  guilty plea today because you did commit the crime charged?
25          THE DEFENDANT:  Yes, Your Honor.
```

2

2

2

22

2

2

2

2

2

2

2

22

2

2

2

2

2

2

2

2

2

2

2

2

2

2

2

2

22

2

2

2

2

2

2

2

2

2

2

2

2

2

2

2

2

22

2

2

2

2

2

2

2

2

2

2

2

2

2

2

2

2

2

2

2

2

2

2

2


2

1           THE COURT:  Then based upon the representations and

2    the answers given by the defendant at the Rule 11 hearing

3    before the magistrate judge, the Court affirms the magistrate

4    judge's finding that the defendant's plea is knowingly and

5    voluntarily made.  The Court also affirms the magistrate

6    judge's finding that the defendant understood the charges,

7    the potential penalties and consequences of his plea.

8    Accordingly, the Court affirms the magistrate judge's

9    acceptance of the defendant's plea of guilty at the Rule 11

10   hearing.

11           There is no factual basis filed, is there?

12           MS. VENTO:  That's correct, Your Honor.

13           THE COURT:  All right.  Then based upon the

14   presentence report, there are no objections to the

15   presentence report that address the factual basis that's put

16   forward in the presentence report.  Accordingly, based upon

17   the facts and offense conduct set forth in the presentence

18   report, defendant's plea of guilty, and the defendant's

19   admissions, the Court finds that there is a factual basis for

20   the entry of the plea of guilty and enters a verdict of

21   guilty.

22           Mr. DeSimone, the probation office has issued a

23   presentence investigation report.  Have you had an

24   opportunity to go over that presentence report with your

25   attorney?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Mr. Walker, have you gone over that

3 report with your client, and are you satisfied your client

4 understands that report?

5          MR. WALKER:  Yes, I have and, yes, I am, Your

6 Honor.

7          THE COURT:  All right.  Have you reviewed the

8 response the probation officer made to the objections that

9 you filed?

10          MR. WALKER:  Yes, I have, Your Honor.  At this time

11 I had spoken with Madam U.S. Attorney.  I would like to

12 withdraw the objection for the two points, Your Honor,

13 because that was specifically laid out in the plea agreement.

14          THE COURT:  The plea agreement.

15          MR. WALKER:  Yes, Your Honor.  So I would like to

16 amend that and withdraw that, Your Honor.

17          THE COURT:  All right.  Then hearing no reason to

18 do otherwise, I'm going to adopt the response the probation

19 officer made to the objections and find that those are

20 properly dealt with, and I will adopt the information

21 contained in the presentence report for the purposes of

22 applying the guidelines and find that the appropriate

23 guidelines offense level in this case is 24, with a criminal

24 history category I, and a guideline sentencing range of 51 to

25 63 months.  I note that none of the objections that were made

1    by the defendant -- and the Government made no objections --
2    that none of the objections that the defendant raised would
3    have affected the guideline range as set forth in the
4    presentence report.
5            There's no 5K motion in this case?
6            MS. VENTO:  That's correct, Your Honor.
7            THE COURT:  And you have filed a request for a
8    variance, Mr. Walker.  Do you wish to be heard?
9            MR. WALKER:  Yes, I do, Your Honor.  Very briefly,
10   Your Honor.
11           On Mr. DeSimone's behalf, there was the issue of
12   the alleged second victim by the initials of A.K.  We did
13   object to that portion of it, Your Honor.  Although, as the
14   Court indicated, will not affect the levels, Your Honor,
15   because it would be an additional loss amount of 40,000.  For
16   the record, Mr. DeSimone did object to the defendant A.K.
17   being listed as one of his potential defendants.  So we want
18   that just for the record, Your Honor.
19           MS. VENTO:  Yes, sir.  As I understand the
20   defendant's objection, is that Ms. Hunt was perhaps more
21   involved in taking A.K.'s money.  And certainly Ms. Hunt was
22   also involved in it, but that does not mean that's at the
23   exclusion of the defendant.  As the victim's own submission
24   to the Court makes clear, it was this defendant was, in fact,
25   involved in her decision to part with the money and her

1  becoming involved in the enterprise as a victim.  And, in

2  fact, Ms. Kubin was interviewed by law enforcement and gave a

3  quite lengthy statement explaining the defendant's

4  involvement years earlier in the sovereign equity phase of

5  the investment fraud in which he was trying to do another

6  project with James Tyson and Victoria Hunt.  That he said he

7  would take victim A.K. under his work and try to teach her

8  finance.  That he was aware of this -- of the fact that the

9  enterprise was taking out credit cards and other things in

10 her name and that she suffered this loss.

11          And so we would -- we would submit, Your Honor,

12 that there's more than sufficient evidence to show that this

13 defendant was in part responsible for the loss that was seen

14 to A.K.  Certainly not solely, but in part responsible for

15 that.

16          THE COURT:  The $40,000 loss that this woman

17 suffered is reasonably foreseeable to the conduct of this

18 man, among other things.  So I'm going to overrule that

19 objection.

20          Now, do you wish to be heard with reference to a

21 request for a variance?

22          MR. WALKER:  Yes, Your Honor, we do.

23          THE COURT:  All right.  You may proceed at this

24 time.

25          MR. WALKER:  May it please the Court.  Your Honor,

1 I'm sure the Court has reviewed my request that I filed.

2 Mr. DeSimone is 42 years old. He's lived his whole

3 life without any criminal history, Your Honor. And he's

4 before Your Honor and he's asking the Court to consider and

5 to downward depart his sentence, Your Honor.

6 Judge, he's also -- there have been several

7 character letters written on Mr. DeSimone's behalf, which

8 would give another side.

9 THE COURT: I've read all of it.

10 MR. WALKER: Yes, sir.

11 And, Your Honor, if I may. If the individuals who

12 wrote those character letters would please stand. They're

13 all here in support of Mr. DeSimone, Your Honor. Thank you

14 all. And if allowed, they'd be glad to speak on his behalf.

15 They pretty much said what they put in their letters comes

16 from their heart, Your Honor.

17 Judge, basically, I'd like ask the Court to look at

18 the 3553(a) factors in Mr. DeSimone's case, the nature and

19 the history of -- nature and circumstances and the history of

20 it, and we're asking the Court to depart.

21 Judge, Mr. DeSimone does not have any criminal

22 history, which in federal court is generally pretty rare,

23 especially being 42 years old, Judge. He's worked all of his

24 life -- all of his adult life. He's a sole provider for his

25 family, his children, and also his mother, Your Honor, who is

1   now -- who is disabled but is going through some serious

2   issues, Your Honor, but she is placed and living with him,

3   Your Honor.

4           Judge, I'd like to draw the attention of the Court

5   to retribution -- excuse me, restitution, Your Honor.

6   Restitution in this case it's $4 million, assuming argument

7   of maybe 4,040,000, Judge.  However, what distinguishes

8   Mr. DeSimone from the majority of individuals who come before

9   you and ask for a variance, Judge, is that Mr. DeSimone has

10  begun the repayment process.  There's been over $300,000

11  repaid to the victim, Your Honor, in this case.  Mr. DeSimone

12  is currently employed, self-employed.  He's doing remodeling

13  and several other ventures to support his family but also in

14  hopes of repaying this restitution amount, Your Honor.  I

15  would contend to the Court that the 300-some thousand is a

16  significant step and shows the good faith of Mr. DeSimone in

17  trying to make the alleged victim whole, Your Honor.

18          Judge, we understand 4 million is a large amount.

19  But normally when I get to this stage, Your Honor, I'm asking

20  the Court to depart or give a variance, and I don't have the

21  facts that this individual has paid almost 10 percent of it

22  back, Your Honor.  Judge, what I asked for in my motion was

23  the Court to consider departing downward to the point where

24  Mr. DeSimone could possibly be in a probationary home

25  detention-type situation.  The reason we ask for that is

1    because Mr. DeSimone has begun to repay this -- the

2    restitution, Your Honor, and this would allow him to continue

3    repaying the restitution, Your Honor, if the Court would

4    fashion a sentence such as that.

5            One of the factors -- I believe it's factor

6    number 7 -- Judge, in 3553(a) speaks of basically repaying

7    the victim, ways to repay the victim, Your Honor, and this --

8    okay.  "The need to provide restitution to any victims of the

9    offense" is how number 7 is worded, Your Honor.  And in this

10   case, if the Court were to fashion a sentence, a sentence of

11   probation or home detention for Mr. DeSimone, that would fall

12   in line with number 7, Your Honor.

13           We also ask the Court to consider unwarranted

14   sentencing disparities among defendants with similar records.

15   Your Honor, again, Mr. DeSimone has no record in this case.

16   And even in the light most favorable to the Government,

17   they -- the Government filed a sentencing memorandum also in

18   which they laid out almost 12 pages of sentencing memorandum,

19   but in that 12 pages, Judge, the United States lays out and

20   lists pretty much the depth of this conspiracy.  It was a

21   large conspiracy.  I believe it was mentioned in the

22   Government's -- in the Government's motion that this is one

23   of the largest in the country.  There were some 90-some

24   victims, 50-some of them -- excuse me, a large number of them

25   have cooperated, have pled, or been found guilty.  A large

1   number of them were given 5Ks -- 5K1s.  There was a lot of

2   cooperation, Your Honor.  And I bring that to the Court's

3   attention because, Your Honor, with all the years and all of

4   the research and all of the resources at the Government's --

5   you know, that the Government has, they contend that this has

6   been going on for years.  It was a huge operation, a huge

7   enterprise.  There was millions -- I believe 75 million was

8   the amount that they had mentioned in their motion, but over

9   $75 million's worth of loss and so many individuals.

10          Judge, I bring that to the Court's attention

11  because with all the years that this conspiracy allegedly was

12  going on and all the cooperation, all the co-defendants,

13  Mr. DeSimone's name has only come up twice at best, Your

14  Honor.  We have the -- we do have the 4 million loss, which

15  Mr. DeSimone pled to, and we have the 40,000 from the victim

16  A.K.

17          Judge, I point that out because Mr. DeSimone is

18  not -- I would contend to the Court he is not a major player

19  in this.  And I would also further point out to the Court

20  that generally in these type of indictments they rank the

21  individuals from first to twenty whatever based on their

22  culpability and leadership roles.  Mr. DeSimone is number 20,

23  Your Honor, in this.  And, Your Honor, we'd ask the Court to

24  take that into consideration.

25          Further, Your Honor, we'd ask the Court to consider

1  fashioning a sentence that would allow him to continue

2  providing support for his family and continue with his

3  business in order that he may continue repaying the alleged

4  victim Mr. Taylor in this, Your Honor.

5          THE COURT:  Well, I object to you saying "alleged

6  victim."

7          MR. WALKER:  Your Honor, I --

8          THE COURT:  Mr. Taylor is --

9          MR. WALKER:  Is a victim.

10          THE COURT:  -- is clearly a victim.

11          MR. WALKER:  Yes, Your Honor.  I -- I withdraw

12  that.

13          THE COURT:  I appreciate the effort.

14          MR. WALKER:  Yes.

15          THE COURT:  But Mr. Taylor is clearly a victim.

16  It's not quite four million.  It's three million three and

17  change.

18          MR. WALKER:  Yes, Your Honor.

19          THE COURT:  And we'll reserve Mr. DeSimone for

20  allocution if he wishes to make that until after I hear from

21  the Government.

22          Do you wish to be heard, Ms. Vento?

23          MS. VENTO:  Yes, Your Honor.  Initially I would

24  note there is an individual, Jeffrey and Beverly Henley, who

25  are in the courtroom.  They are not specifically victims of

1    the crimes charged in this indictment, but they have just
2    handed me a letter describing their victimization through
3    other activities of Mr. DeSimone, and so I wanted to make the
4    Court aware of that and give the Court an option.

5              THE COURT:  Do they wish to be heard?

6              MR. MILLS:  Please the Court.  I'm William Mills of
7    the Cabarrus County Bar.  I am the -- I'm the administrator
8    C.T.A. of the Estate of Tim Hurst, who's a victim, along with
9    the Henleys, of the civil fraud that Mrs. Henley wishes to
10   call to the Court's attention, and I'm here for that purpose,
11   Your Honor.

12             THE COURT:  Ms. Vento, are there any other
13   identifiable victims in this case?

14             MS. VENTO:  There are not, sir.

15             MR. MILLS:  The Estate of Tim Hurst.  Maybe I
16   didn't understand the question.

17             THE COURT:  All right.

18             MS. VENTO:  Your Honor, to respond briefly to a
19   number of points defense counsel made.  A few just very
20   quickly.

21             Defendants in this indictment were listed
22   alphabetically, not by level of culpability.  The fact that
23   this level is twentieth doesn't have anything to do with
24   where he falls in this particular scheme.

25             This is the second defendant in the RICO indictment

1　in the case to be charged with -- to be sentenced for his

2　involvement in the securities or the investment fraud side as

3　opposed to the mortgage side fraud.  As the Court is, of

4　course, aware, Travis Bumpers was the first, and he received

5　a sentence of 66 months after a 5K for his cooperation with

6　the Government.

7　　　　This defendant had the opportunity to cooperate

8　with the Government, and I think it is worth discussing

9　briefly.  Certainly I've gotten into it in the sentencing

10　memorandum, but it's worth discussing briefly because it does

11　go to his history and characteristics.

12　　　　He was given the opportunity to come in and to help

13　the Government and to help himself, and he simply couldn't

14　stop himself from lying, to be brief and candid.  He said

15　things that were untrue.  The Government would confront him

16　with documents.  He would have to admit what he just said was

17　not true, and this happened repeatedly to the point where the

18　Government made the decision it simply could not use him as a

19　witness.  It's one thing when it sometimes takes people a

20　little bit to tell the whole story; it's another when they're

21　saying things untrue and easily be disproven.  And that is

22　why this defendant has not received a 5K motion.

23　　　　It is also something that gives the Government

24　concern in regards to looking at his history and

25　characteristics and the issue of specific deterrence, because

1   while he has pled guilty and he has accepted responsibility
2   for his role in this, he seems to be unable to stop himself
3   from trying to point the finger at other people and minimize
4   what he sees his own role and to lie when he thinks he gets
5   away to the extent of his role in the fraud overall.

6          I would respectfully submit the Court should
7   consider in evaluating the defendant's history and nature and
8   circumstances and the need for specific deterrence in this
9   regard.  Certainly there is much positive to say about this
10  defendant's history and characteristics.  I, too, have read
11  all of the letters submitted by his family and friends, and
12  they tell a story of him that is, frankly, completely
13  different than the story that is told by the victims, and
14  certainly say much positive about him.  But that has to be
15  balanced against the nature and circumstances of the offense,
16  and the nature and circumstances of the offense here are
17  incredibly serious.

18         This is a defendant -- while there were others that
19  certainly were involved in causing more people to part with
20  their money, this is a defendant who was involved in just one
21  isolated incident.  He was involved with these people over a
22  number of years.  He knew they were under investigation.  He
23  knew they had failed to follow through on any of their
24  promises from the first phase and, nevertheless, he went to
25  Art Taylor and he vouched for these people and he convinced

1   him to transfer $4 million to them.

2          This defendant does have one of the highest losses

3   because of the amount of money he was able to cause that one

4   individual to part with.  Albeit, he does not have a victim

5   enhancement because it was a smaller number of victims with

6   larger money as opposed to a larger number of victims with

7   less money.  But this is a defendant that not only knew that

8   he was engaged in fraud with Victoria Hunt and James Tyson,

9   Jr., but knew there was an investigation of that fraud, lied

10  to the first victim, Ms. Kubin, about that and then caused

11  another defendant to part with more than $4 million.

12         I would submit that, Your Honor, that shows both a

13  very serious nature and circumstances of the offense, but

14  it's also telling with regards to the history and

15  characteristics of this defendant and the need to protect the

16  public from further crimes and afford not just general

17  deterrence, but also some measure of specific deterrence.

18         As the Court is aware from the letter I just passed

19  up in the presentence report, there are two victims in this

20  particular case.  There is also evidence to suggest that this

21  defendant was involved in other fraud, as evidenced by the

22  letter and the civil claims that have come through, and he

23  has not otherwise led a law abiding life.

24         Now, because he pled guilty, the Government didn't

25  continue to investigate all those additional things and

1    that's why there's not more with regards to this.  That's

2    simply the way.  When the defendant pleads guilty, we stop

3    looking.  But I do think what is set forth in the PSR and

4    that letter is something that the Court can and should

5    consider in fashioning the appropriate sentence.

6            The Government would -- I would also -- as the

7    Court is aware, a sentence of probation or home detention

8    would be an extraordinary departure, far greater than anyone

9    else in the case, I believe, except for perhaps a woman who

10   was terminally ill and would result I think I can fairly say

11   in unwarranted sentencing disparities.

12           The Government would submit that a sentence of 54

13   months, which is the low end of the advisory guideline range,

14   would be sufficient, but not necessary -- but not greater

15   than necessary, to serve the sentencing purposes in these

16   circumstances.  Particularly acknowledging the history and

17   characteristics of this defendant and the seriousness of the

18   crimes he committed, the need to promote respect for the law,

19   and the need -- which I don't think is often in white collar

20   cases but is here -- to provide some measure of specific

21   deterrence in addition to the issue of general deterrence,

22   and we would ask the Court to impose a sentence in that

23   range.

24           THE COURT:  Mr. DeSimone, you have a right to

25   address the Court in allocution if you so choose.  Do you

have anything you wish to say?

        MR. WALKER:  May I have just a brief moment, Your Honor?

        THE COURT:  You may.

        MR. WALKER:  Thank you, Your Honor.  He would like to briefly address the Court, Your Honor.

        THE DEFENDANT:  Your Honor, I pled guilty to take responsibility for Mr. Taylor's loss.  Mr. Taylor invested in us, not necessarily in the Prestige Group, and I fully intend to repay him and anybody else, including people who may or may not be involved in this case that may feel we owe them money from this real estate project that we were involved in.

        I've never regretted anything more in my life and for the last -- I don't know how many years it's been actually, Your Honor, since the day I -- I was notified about all of this.  It's been on my mind every second of every day.  And I'm already serving a sentence of public humiliation, familial humiliation, and all I want is the opportunity to repay my debts sooner than later.  That's it.

        THE COURT:  Have Mr. Taylor and Ms. Kubin been given an opportunity to come in and be here?

        MS. VENTO:  Yes, sir, they have.  Mr. Taylor's lawyer is here today, but he was unable to be here.

        THE COURT:  Does he wish to say anything on behalf of Mr. Taylor?

1      MS. VENTO:  Yes, he would like to, Your Honor.

2      THE COURT:  All right.  Mr. Brackett, come on

3  forward.

4      MR. BRACKETT:  Your Honor, I am here on behalf of

5  Mark Taylor.  I've been involved representing Mr. Taylor

6  since this whole scheme started to unravel several years ago.

7  Part of that included handling a civil action involving

8  Mr. DeSimone, Victoria Hunt, Toby Hunter, and Prestige.

9      Your Honor, I agree with the characterization by

10  the assistant U.S. attorney regarding Mr. DeSimone in the

11  fact that he can't stop himself from lying.  The civil action

12  we handled was much more involved because of Mr. DeSimone's

13  very vehement denials of any wrongdoing, denials of knowledge

14  regarding actions that took place with Mr. Taylor's money.

15      Mr. Taylor's money was supposed to be held in

16  escrow under what was called a "control access account" that

17  provided that if at any point its balance dropped by $25,000,

18  it was all to be immediately liquidated, returned to

19  Mr. Taylor.  Once we got into the documents, we discovered

20  that within less than a day of the time that money was placed

21  into escrow it began moving out, including funds flowing to

22  Mr. DeSimone.

23      Mr. DeSimone not only in the civil case denied his

24  involvement, he filed a counterclaim against others

25  vehemently denying his involvement.  By digging through the

1    paperwork, we were able to establish his involvement and the

2    flow of funds.

3            I will say, Your Honor, Mr. Taylor is not here

4    today because of a commitment he has to his job coaching high

5    school students in New Jersey.  It's good that he is not here

6    because I can't imagine what his reaction would have been to

7    the representation that Mr. DeSimone has repaid money to the

8    victim.

9            There was over $300,000 returned to Mr. Taylor.

10   The source of those funds was a hedge fund account in which

11   some of the funds had been placed in connection with the

12   civil case.  We got an injunction that froze that account.

13   When that account was ultimately -- those funds were turned

14   over to the Government to be paid back to the victim.  The

15   payment that came out came -- it was made in the name of

16   Mr. DeSimone's company.  That check was sent to me.

17   Mr. DeSimone did, in fact, endorse that check so that those

18   funds made it back to Mr. Taylor.  Other than the turnover of

19   those funds, there has not been one penny paid towards

20   restitution.

21           Now, if Mr. Taylor were here, I think he would have

22   had that to say and much more, but Your Honor needed to be

23   aware of those circumstances.

24           THE COURT:  All right.  Thank you, sir.

25           In this case, guided by U.S. v. *Booker* and Fourth

1  Circuit decision *U.S. v. Green*, I understand the Sentencing
2  Guidelines are only advisory, but I also know that I am
3  required to consult those guidelines and that they do provide
4  at least rough guidance as to what would be a reasonable
5  sentence, and that I am advised to attempt to come up with a
6  sentence that is sufficient, but not greater than necessary,
7  to accomplish the sentencing factors in 18 U.S.C. 3553(a).

8        I believe the nature and circumstances of the
9  offense are adequately stated in the Government's sentencing
10 memorandum, and I believe that the history and circumstances
11 of the defendant are adequately set forth in the presentence
12 report and all of the letters in support that the Court has
13 received.  It seems clear that much like the Roman god Janus,
14 Mr. DeSimone has one face for some group of people, including
15 these here supporting him, and quite another for people who
16 deal with him in business.

17       I note the amount of charitable conduct, including
18 assistance to a neighbor who had her feet operated on.
19 Nevertheless, this is a serious offense and some sentence to
20 promote respect for the law and to provide just punishment is
21 required in this case.  Whether adequate deterrence to
22 criminal conduct in general is available is a matter for
23 debate, but certainly the fact that Mr. DeSimone will receive
24 a sentence in this case for whatever deterrent factor that
25 possesses is out there.  Regrettably, I believe that an

1  active sentence is necessary to protect the public from

2  further crimes of the defendant based upon the information

3  that we've received as to other civil fraud and other cases

4  that was going on contemporaneously with the offense conduct

5  here.

6          I don't think there's any need for educational or

7  vocational training, medical care, or other correctional

8  treatment.  Although, Mr. DeSimone -- the Court would

9  recommend, Madam Clerk, that Mr. DeSimone be permitted to

10 participate in any educational or vocational training that's

11 available within the system.

12         There is a significant factor here, which is to

13 avoid unwarranted sentencing disparities among defendants.

14 Mr. DeSimone was in on the securities fraud part of this deal

15 and not so much the mortgage.  But without the securities

16 fraud, without the money that that provided, the other stuff

17 wouldn't have gone on either.  So this is not just in

18 isolation.  And he knew what was going on.

19         As to providing restitution, any victims in the

20 offense, restitution will be ordered, and he will be ordered

21 to pay at least minimal amounts of money after he is

22 released.

23         Therefore, having considered those factors, I will

24 now state a sentence that I find is sufficient, but not

25 greater than necessary, to accomplish those sentencing

1   factors.

2           I would order that Mr. DeSimone serve a term of
3   incarceration of 51 months in the Bureau of Prisons as
4   designated.  He may self-report.  He is to serve a sentence
5   of supervised release of two years after he is released from
6   incarceration.

7           He doesn't have the ability to pay a fine.  The
8   Court would not require him to pay a fine or income to pay
9   any court-appointed attorney's fees.

10          He is a suitable candidate, as I said, for
11  voluntary surrender.

12          He would be required to support his dependents from
13  prison earnings while incarcerated.

14          And while he's on supervised release, he would be
15  subject to the standard conditions in effect in the Western
16  District of North Carolina, except periodic drug testing
17  mandated by the Violent Crime Control and Law Enforcement Act
18  of 1994 is hereby suspended.  This offense is not drug
19  related.  The defendant has no current or past history of
20  substance abuse.

21          He owes a special assessment of $100, which is due
22  and payable immediately.

23          It is further ordered, having determined the amount
24  of restitution, that he shall make restitution in the
25  following amount:  To Mark Taylor, 3,323,403.80; to Anita

1   Kubin, $40,000.  Any payment that is not payment in full

2   should be divided up proportionally among the victims named.

3           The defendant is jointly and severally liable with

4   Victoria Hunt, James Tyson, Jr. as to Mr. Taylor and James

5   Tyson, Sr. as to Anita Kubin.  And this Court gives notice

6   that this case may involve other defendants who may be held

7   jointly and severally liable for payment of all or part of

8   restitution ordered herein and may order such payment in the

9   future.

10          There's no forfeiture involved in this case that I

11  know of.

12          MS. VENTO:  That's correct.

13          THE COURT:  The payment of money -- monetary

14  penalties, as I said, is due and payable immediately.  What

15  he can't pay he shall pay through the Federal Bureau of

16  Prisons Inmate Financial Responsibility Program.

17          Upon release from imprisonment, any remaining

18  balance shall be paid in monthly installments of no less than

19  $50 to commence within 60 days until paid in full.

20  Throughout the period of supervision, the probation officer

21  shall monitor the defendant's economic circumstances and

22  shall report to the Court with recommendations, as warranted,

23  any material changes that affect the defendant's ability to

24  pay any court ordered penalties.

25          That is the proposed sentence.  Counsel, is there

1    any reason other than what we've already heard about that the
2    Court should not order that sentence imposed as stated?
3              MS. VENTO:  No, sir.
4              MR. WALKER:  No legal reason, Your Honor.
5              THE COURT:  All right.  The Court is aware of the
6    impact on Mr. DeSimone's family, and I deeply regret it.  I
7    wish he had thought about that before his involvement.
8              MS. VENTO:  Your Honor, there are some counts to be
9    dismissed.
10             THE COURT:  Say it again.
11             MS. VENTO:  There are some counts to be dismissed.
12             THE COURT:  And they are?
13             MS. VENTO:  Counts Two, Four and Five as to this
14   defendant.
15             THE COURT:  Counts Two, Four and Five as to this
16   defendant DeSimone are ordered dismissed on motion of the
17   Government, and the sentence that the Court has stated is
18   ordered imposed as stated.
19             I would entertain, if the Government would look at
20   it, as he is to be designated to self-report.  I understand
21   that there are issues regarding his mother and her housing
22   and some difficulties involved in that.  So if that's going
23   to present insuperable difficulties for his disabled mother,
24   then, Mr. Walker, you're going to need to contact Ms. Vento,
25   and the two of you can get together and see if there's a

1  possibility of a recommendation for some modest deferral of

2  report date.  I emphasize "modest."

3           MS. VENTO:  Yes, sir.

4           MR. WALKER:  Yes, sir.

5           THE COURT:  He has waived his right to appeal in

6  his plea agreement.  So I believe that is all we need to do

7  for this hearing today.

8           MS. VENTO:  Thank you, Your Honor.

9           THE COURT:  All right.  We're in recess until two

10  o'clock.

11  (The proceedings were recessed at 11:14 a.m.)

12                         *    *    *

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NORTH CAROLINA

CERTIFICATE OF COURT REPORTER

I, Jillian M. Turner, RMR, CRR, CLR, Official Court Reporter, certify that the foregoing transcript is a true and correct transcript of the proceedings taken and transcribed by me in the above-entitled matter.

Dated this the 14th day of April 2015.

/s/ Jillian M. Turner
Jillian M. Turner, RMR, CRR, CLR
U.S. Official Court Reporter